# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DELORES DUPREE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 07-CV-3513 |
| | ) | |
| GREYHOUND LINES, INC. and | ) | |
| DELTA BUS LINES, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Delta Bus Lines' Motion to Dismiss [DE 8] for lack of personal jurisdiction, filed on July 11, 2007. For the following reasons, the Court grants Delta Bus Lines' Motion to Dismiss [DE 8].

**I.      Background**

On April 11, 2007, Delores Dupree, a resident of Illinois, filed a single-count Complaint against Greyhound Lines, Inc. ("Greyhound") and Delta Bus Lines ("Delta") in the Circuit Court of Cook County, Illinois, alleging general negligence arising out of a motor vehicle accident. On June 22, 2007, Delta removed the action to this Court, and on July 11, 2007, Delta moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction

According to the allegations in Plaintiff's Complaint, on July 30, 2005, Ms. Dupree was traveling through Tennessee, as a passenger on a bus driven by Willie Kemp, when the bus collided with a car. Dupree alleges that on July 30, 2005, and for a long time prior to that date, Greyhound and Delta were common carriers in the business of transporting passengers and that Willie Kemp

was an "agent and servant" of Defendants Greyhound and Delta. She does not allege which company employed Kemp, nor does she allege who owned and operated the bus on which she was riding when the accident occurred.

Dupree also alleges that she contracted with Greyhound, in Chicago, to transport her from Chicago to Mississippi. In her response to Delta's Motion to Dismiss, she attached a copy of her "RECEIPT & ITINERARY," demonstrating that on July 29, 2005, she purchased from Greyhound Lines, Inc. a round trip ticket from Chicago to Mississippi in the amount of $118.00. Dupree's travels took her from Chicago to Effingham, Illinois, from Effingham to Sikeston, Missouri, and from Sikeston to Memphis, Tennessee. There, she boarded a Delta bus bound for Greenville, Mississippi. From what the Court can glean from the parties' filings, it was on that leg of the trip that Dupree was injured.

Delta is incorporated in the State of Mississippi and has its principal place of business in the State of Mississippi. On April 26, 2007, Joseph Howard, the President and operator of Delta, was personally served with a copy of the Summons and Complaint in Greenville, Mississippi. In support of its Motion to Dismiss, Delta submitted the affidavit of Howard, in which he attests that Delta provides intercity transportation services to and from three destinations, including Jackson, Mississippi, Memphis, Tennessee, and Baton Rouge, Louisiana, and that Delta has never provided intercity transportation services to, from or through any part of Illinois. He also states that Delta has never maintained an office in Illinois, owned, used, or possessed any real property situated in Illinois, made or performed any contract substantially connected with Illinois, hired any employees in Illinois, advertised its services to Illinois residents, or otherwise done any business in Illinois.

**II.     Analysis**

When personal jurisdiction over a defendant is challenged by way of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proving that jurisdiction exists and must make a *prima facie* case of jurisdiction. See *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). When a court decides a motion on the basis of paper submissions, a court accepts as true the plaintiff's undisputed allegations, and disputes in the evidence are resolved in favor of jurisdiction. See, *e.g.*, *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). However, the Seventh Circuit has cautioned that "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id*. at 783.

When a court's subject matter jurisdiction is based on diversity of citizenship – as in this matter – the court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. See *Hyatt Int'l*, 302 F.3d at 713. Accordingly, the court looks to the Illinois long-arm statute, which contains a "catch-all" provision allowing Illinois state courts to assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. See 735 ILCS 5/2-209(c); see also *Hyatt Int'l*, 302 F.3d at 714. Although the United States and Illinois Constitutions do not contain identical due process guarantees, the Seventh Circuit has opined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l*, 302 F.3d at 715. Given this direction, the Court moves directly to the federal constitutional inquiry – whether

exercising personal jurisdiction over Delta comports with federal due process protections. *Id.* at 714-15.

Under the Due Process Clause, before an out-of-state defendant may be required to defend a case in the forum state, it must have "minimum contacts" with the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This "purposeful availment" standard ensures that a nonresident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff. *Burger King v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

There are two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 (1984); see also *Hyatt Int'l*, 302 F.3d at 713. General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 416; *Hyatt Int'l*, 302 F.3d at 713. If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt Int'l*, 302 F.3d at 713. On the other hand, specific jurisdiction is more limited and exists for controversies that "arise out of" or "relate to" a defendant's forum contacts. *Id*. Here, Dupree contends that Delta is subject to both specific and general jurisdiction. The Court turns first to Dupree's contention that Delta is subject to specific jurisdiction.

A court may assert specific jurisdiction over an out-of-state defendant when the minimum contacts standard is met and the plaintiff's cause of action arises out of or relates to the defendant's contacts with the forum state. *E.g., Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414 (1984). The defendant's contacts with the forum state must be of a nature and quality such that the defendant has fair warning that it could be required to defend a suit there. *Burger King Corp. v. Rudziewicz,* 471 U.S. 462 (1985). This ensures that jurisdiction over a defendant is "not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue" and that "the defendant retains sufficient, albeit minimal, ability to structure its activities so that it can reasonably anticipate the jurisdictions in which it will be required to answer for its conduct." *Purdue Research Found.,* 338 F.3d at 780. "Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Id*.

Dupree can establish specific jurisdiction if she can show that Delta could have anticipated being hailed into this Court with respect to an accident that occurred in Tennessee. Dupree maintains that when she purchased her bus ticket from Chicago, Illinois to Greenville, Mississippi, she entered into a contract with both Delta and Greyhound. She points out that the ticket was paid for in Illinois and delivered to her in Illinois. She argues that Greyhound serves as Delta's agent in Illinois, through which Delta solicits business in Illinois for travel to Tennessee and Mississippi. Based on these considerations, Dupree argues that hailing Delta into an Illinois court would be both fair and reasonable.

However, the sparse factual allegations and other "affirmative evidence supporting the exercise of jurisdiction" provided by Dupree do not permit such a conclusion. *Purdue Research*

5

*Foundation*, 338 F.3d at 783. Dupree has not alleged that Delta has any offices, employees, real property, mailing addresses, or bank accounts in Illinois. *Cf. Cooper v. Greyhound Lines, Inc.*, 1994 WL 701993, *3 (S.D.N.Y. December 14, 1994) (finding no jurisdiction over Virginia bus company that had no offices, telephone listings, mailing addresses, employees, real property, or bank accounts in New York). Nor does she contend that Delta advertises its services in Illinois or that any employee of Delta was ever physically present in Illinois with respect to any aspect of the relevant accident, which occurred in Tennessee. *Cf. Martin v. National R.R. Passenger Corp.*, 2003 WL 21488119, *2 (E.D. La. June 20, 2003) (finding no jurisdiction over bus company that had no routes or employees in Louisiana, and accident occurred in California).

Rather, according to the uncontroverted affidavit of Delta's president, Delta is a Mississippi corporation with its principal place of business in Mississippi. It has two post office boxes and one office/terminal, all located in Mississippi, and owns ten buses and employs sixteen workers, all of whom are based in Mississippi. It provides intercity transportation services to and from three destinations in Mississippi, Tennessee, and Louisiana. Moreover, Delta has never provided intercity transportation services to, from, or through any part of Illinois. And, according to its president, Delta has never made or performed any contract substantially connected with Illinois, a statement that Dupree has not rebutted. See *Purdue Research Found.*, 338 F.3d at 780 (once defendant has submitted affidavit opposing jurisdiction, plaintiff must submit affirmative evidence supporting a finding of jurisdiction); *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (same).

Dupree's primary theory – that Greyhound serves as Delta's agent and "inter-line partner" in Illinois – stems from the fact that Greyhound sold Dupree a single ticket which provided continuous service from Illinois to Mississippi and included a leg on a bus not owned and operated

by Greyhound. This factual scenario is not uncommon, as demonstrated by the long history of so-called "ticket cases" in the federal courts. See, *e.g., Reyes v. Japan Air Lines*, 70 F.R.D. 64, 70 (D. Puerto Rico 1975); *Kenny v. Alaska Airlines, Inc.*, 132 F. Supp. 838 (D.C. Cal. 1955). Under this business arrangement, the exact nature of which is not evident from the parties' submissions, one carrier (here, Greyhound) may sell "through tickets" good for travel on the connecting lines of another carrier (here, Delta). Such tickets are accepted by Delta as payment for the fare over its portion of the trip without requiring the customer to make additional purchases before boarding a Delta bus in Tennessee, Mississippi, or Louisiana.[1] Although customers pay only one price (in this case, $118) to the company that issues the "through ticket" – Greyhound in this instance – common sense dictates that carriers have reciprocal compensation arrangements to ensure that each receives payment for the portion of the entire trip that takes place on its routes.

Because Dupree's principal theory of jurisdiction hinges on Greyhound's "agency" relationship to Delta, and she offers no additional direct contacts between Delta and Illinois, the essential question before the Court is whether the sale by Greyhound in Illinois of a "through ticket" good for travel on a Delta bus outside of Illinois constitutes the doing of business by Delta in Illinois so that Delta is within the jurisdiction of this Court. This Court respectfully concludes that it does not.

In 1917, the United States Supreme Court observed that "[o]bviously the sale by a local carrier of through tickets does not involve a doing of business within the state by each of the connecting carriers." *Philadelphia & Reading Ry. Co. v. McKibbin*, 243 U.S. 264, 268 (1917); see also *Peterson v. Chicago, Rock Island & Pac. R.R. Co.*, 205 U.S. 364, 394 (1907). In similar

---

[1] Although not set forth in the parties' briefs, the Court envisions that employees at Delta's terminal also sell "through tickets" good over the connecting lines of Greyhound, again saving the customer the trouble of having to purchase and keep track of several tickets.

7

fashion, the Seventh Circuit more recently noted that while "the world is getting smaller and the boundary lines between [places] have become blurred * * * those boundary lines still exist, and one of their more important functions is to allocate litigation among the several national court systems." *Hyatt Int'l*, 302 F.3d at 710. While a great deal has changed since the early twentieth century, the Court has found no reason to deviate from the Supreme Court's prior teaching in "ticket" cases.

That well established view seems consistent with federal law governing common carriers of passengers. To the extent that Greyhound and Delta act together in ticketing passengers who wish to use both companies' routes on the same trip, they do so in compliance with the mandates of 49 U.S.C. § 13705(a). That statute requires interstate carriers of passengers to establish "through routes" as well as individual and joint rates for the overall convenience of the traveling public. 49 U.S.C § 13705(a) ("A motor carrier providing transportation of passengers subject to jurisdiction * * * shall establish through routes with other carriers of the same type and shall establish individual and joint rates applicable to them"); see also *Cooper*, 1994 WL 701993 at *4. Tellingly, Dupree's allegations and affirmative evidence taken as a whole establish no more than that Delta honored the mandates of federal law, and that Delta is connected to Illinois only by virtue of the Greyhound "through ticket." Dupree's conclusory allegation that Greyhound acts as an "agent" of Delta on the basis of that ticket does not sufficiently establish a relationship through which Greyhound's acts in Illinois could be imputed to Delta. See *Reyes*, 70 F.R.D. at 70 (finding that agency theory in a "ticket case" could lead a court to conclude that partner airline was an agent for the plaintiff, rather than the defendant, by obtaining a "through ticket" at plaintiff's request).

In the Court's view, the result and rationale of the "ticket cases" and the statutory command cited above reflect a consensus that the "through ticketing" arrangement between Delta and

8

Greyhound (and presumably many other national and local bus lines) benefits the traveling public. Without this arrangement, travelers like Dupree, who have numerous legs to their journeys, would have to purchase several tickets in several locations before reaching their final destinations. As the ticket attached to Dupree's own brief illustrates, long haul bus service frequently involves overnight travel, meaning that absent "through travel" ticketing, passengers would be required to walk to the terminal at each stop and purchase a new ticket and companies would be compelled to staff their ticket offices at all hours of the day to accommodate those passengers. The arrangement mandated by Congress avoids those inefficiencies, so that a single transaction yields a ticket from point A to C (or D, E, or F) and results in a less stressful traveling experience.

The cases cited by Dupree in an effort to locate precedent for upholding jurisdiction on the basis of similarly limited contacts by the out-of-state defendant are unavailing. Dupree primarily relies on *Biltmoor Moving & Storage Company v. Shell Oil Company*, 606 F.2d 202 (7th Cir. 1979), in which the Seventh Circuit held that an Illinois court has jurisdiction over a corporation that lacked a physical presence in Illinois, but entered into a contract that required substantial and lengthy performance within Illinois *by all parties, including the non-resident defendant*. Here, there are neither allegations nor affirmative evidence that Delta ever was present in Illinois to enter into or perform on a contract. Instead, the Court has the affidavit of Delta's president, which states that Delta has never made or performed any contract substantially connected with Illinois.[2]

The Court turns briefly to Dupree's argument that Illinois has general jurisdiction over Delta. Dupree can establish general jurisdiction if Delta's contacts are so continuous and systematic that

---

[2] Dupree also cites to an unpublished decision, *Rutenberg v. Rutenberg*, 968 F.2d 1218 (7th Cir. 1992), in support of her position that entering into a contract in Illinois subjects a defendant to jurisdiction in an Illinois court. Although the Federal Rules of Appellate Procedure have been amended to allow citation to unpublished decisions issued on or after January 1, 2007, see Fed. R. App. P. 32.1, *Rutenberg* was decided in 1992. Accordingly, the Court will not consider it.

Delta could reasonably foresee being haled into an Illinois court. *Hyatt Int'l*, 302 F.3d at 713. Delta's contacts with Illinois "must be so extensive to be tantamount to [Delta] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [an Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue Research Found,* 338 F.3d at 787.

Dupree's argument for general jurisdiction mirrors the argument that she makes for specific jurisdiction: she entered into a contract with both Delta and Greyhound when she bought and received her bus ticket in Illinois, and Greyhound serves as Delta's agent in Illinois. In her response brief, she argues that these contacts are continuous and systematic such that Delta should be subject to general jurisdiction in Illinois. In support of her theory, Dupree points to *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002), and *Quaker Oats Co. v. Chelsea Indus., Inc.*, 496 F. Supp. 85 (N.D. Ill. 1980). Neither case is persuasive on the facts of this case.

In *Meier*, the Eleventh Circuit held that a foreign parent corporation was subject to jurisdiction because its domestic subsidiaries manifested no separate corporate interests of their own and functioned solely to achieve the purpose of the dominant corporation. 288 F.3d at 1273. The Florida subsidiaries coordinated reservations, purchased goods, provided day-to-day accounting services, and paid for advertising and other expenses incurred by the parent corporation. In *Quaker Oats*, jurisdiction was based on an alien corporation's contacts with Illinois over a period of years, including the sale of substantial amounts of its product to Illinois customers and the presence of its representatives in Illinois on several occasions to meet with customers. 496 F. Supp. at 88.

Here, Dupree has never alleged that Delta has "continuous and systematic general business contacts" with Illinois, much less pointed to affirmative evidence that supports that assertion. See

*RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272 (7th Cir. 1997) (finding that plaintiff's failure to allege that defendant had systematic contacts with Illinois constituted a waiver of any general jurisdiction argument). She has not alleged that Greyhound is a subsidiary of Delta, operating solely to achieve the goals of Delta, or that Delta and Greyhound have identical corporate interests, as was the case in *Meier*. Nor has she alleged that Delta representatives have been present in Illinois on a regular basis (like the *Quaker Oats* defendants), or that Delta has solicited or advertised to Illinois residents (as did the defendants in both *Meier* and *Quaker Oats*).

As noted above, Dupree bears the burden of establishing a *prima facie* case that this Court has personal jurisdiction over Delta and is responsible for submitting affirmative evidence to overcome Delta's opposition to the exercise of jurisdiction in this case. Here, all that Dupree can muster in the way of contacts by Delta within the State of Illinois is a "through ticket" that she purchased from Greyhound in Chicago providing for transit on Greyhound buses from Chicago to Memphis and on Delta buses from Memphis to Greenville, Mississippi. Federal law mandates that Delta enter into such "through ticketing" arrangements for the benefit of the traveling public, and Delta has undertaken no other activity to establish a "real relationship" with Illinois, either in general or in regard to the specific transaction at issue in this case. Therefore, this Court cannot conclude that Delta has purposefully availed itself of the privilege of conducting activities within Illinois and invoked the benefits and protections of its laws such that hailing Delta into an Illinois court would be both fair and reasonable. See *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

### III. Conclusion

For the reasons stated above, the Court grants Defendant Delta's Motion to Dismiss [DE 8] for lack of personal jurisdiction.

Dated:  February 11, 2008  _____
Robert M. Dow, Jr.
United States District Judge